

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2001

# Nationwide Mutl Ins v. Cosenza

Precedential or Non-Precedential:

Docket 00-4151

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Nationwide Mutl Ins v. Cosenza" (2001). *2001 Decisions.* Paper 158.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/158

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 18, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-4151

NATIONWIDE MUTUAL INSURANCE COMPANY

v.

WILLIAM COSENZA; ANGELINA C. COSENZA, h/w;
PATSY DEZII

       William Cosenza; Angelina C. Cosenza;
       Patsy Dezii,

       Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 99-cv-03533)
District Judge: Hon. Eduardo C. Robreno

Argued May 31, 2001

Before: SLOVITER, FUENTES and COWEN,
Circuit Judges

(Filed: July 18, 2001)

       David C. Corujo, Esq.
        (Argued)
       Fronefield & de Furia
       17 E. Front Street
       P.O. Box 647
       Media, PA 19063

        Counsel for Appellants

James C. Haggerty, Esq.
Scott J. Tredwell, Esq.
 (Argued)
Christine P. Busch, Esq.
Swartz, Campbell & Detweiler
1601 Market Street, 34th Floor
Philadelphia, PA 19103

 Counsel for Appellee

OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal presents a question of first impr ession relating to the construction and enforceability of an exclusion in an automobile insurance contract stating that an insured cannot recover benefits under both the liability coverage and the underinsured motorist coverage of the insurance contract. The District Court exercised jurisdiction based on diversity of citizenship under 28 U.S.C. S 1332. We exercise appellate jurisdiction under 28 U.S.C. S 1291. We hold that, on the facts of this case, the "dual recovery" prohibition is invalid and unenforceable pursuant to Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL). 75 Pa. C.S.A. S 1701 et seq.

I

This case is a dispute about insurance coverage arising from the following facts. On July 16, 1995, Mrs. Cosenza was driving a vehicle in which her husband and mother (Ms. Dezii) were passengers when they collided with a vehicle driven by Angela Nicolucci. Mr. Cosenza and Dezii were very seriously injured in the crash and Mrs. Cosenza sustained some injuries as well. They instituted suit in state court against Nicolucci. Nicolucci joined Mrs. Cosenza as a defendant, claiming that she was contributorily negligent. Nationwide Insurance, the Cosenzas' insur er and the appellee in this case, assumed the defense of Mrs. Cosenza and consistently asserted her lack of fault. On the eve of trial, the suit was settled.

2

Under the terms of the settlement, appellants received $15,000 from Nicolucci's insurer, the full amount of coverage available under her liability policy. Mr . Cosenza and Dezii also received some payment under the liability portion of Nationwide's auto policy, but did not exhaust the full amount of the coverage available under that policy. The Cosenzas' vehicle was covered by an auto insurance policy issued by Nationwide Insurance. That policy pr ovided $500,000 in liability coverage and $500,000 in underinsured motorist coverage. Mr. Cosenza also maintained an umbrella insurance policy that pr ovided an additional $1,000,000 in total liability coverage and $500,000 in underinsured motorist coverage. The settlement did not include any payments by Nationwide under either the underinsured motorist portion of the policy or under the umbrella policy.

Thereafter, the Cosenzas and Dezii, the appellants in this appeal, notified Nationwide of their intention to proceed with underinsured motorist arbitration under their auto insurance policy and the supplemental umbrella insurance policy. They filed a petition in state court to compel arbitration. In response, Nationwide filed a notice of removal of the proceedings to the district court and also filed a complaint seeking a declaratory judgment preventing arbitration. Each of the parties moved for summary judgment with the following results:

> 1) The District Court determined that the dispute did not fall within the insurance contract's arbitration clause and was, therefore, properly before the court;
>
> 2) Mr. Cosenza and Dezii, who recover ed under the liability portion, were prohibited fr om recovering underinsured motorist benefits for their own injuries under the auto policy or the umbrella policy;
>
> 3) Mrs. Cosenza, who did not recover under the liability coverage, was allowed to seek recovery under the underinsured motorist provision of the auto policy and the umbrella policy;
>
> 4) Mrs. Cosenza was prohibited from r ecovering loss of consortium benefits for her husband's injuries under the underinsured motorist provisions;

3

5) Mr. Cosenza was allowed to seek loss of consortium benefits for his wife's injuries under the underinsured motorist provision;

6) The court determined that Nationwide was not entitled to a credit in the amount of payments already received by the insureds pursuant to the state court settlement.

Appellants appeal the District Court's ruling that this dispute is not subject to arbitration. Alter natively, they appeal the court's holding that Mr. Cosenza and Dezii are barred from recovering under the underinsured motorist provision of the auto policy and under the umbr ella policy. They also appeal the court's ruling that Mrs. Cosenza is barred from recovering loss of consortium damages based on her husband's injuries under the underinsur ed motorist provision of the auto policy and under the umbr ella policy. Nationwide purports to cross-appeal the district court's findings as to Mrs. Cosenza's eligibility for r ecovery, Mr. Cosenza's right to recover for loss of consortium for his wife's injuries, and the court's ruling that Nationwide is not entitled to a credit for payments made in the state court settlement.

II

Before proceeding to a discussion of the substantive issues in this case there are two thr eshold issues that must be addressed – whether the district court had jurisdiction to decide the issues raised in this case and whether this Court can properly entertain Nationwide's purported cross-appeal of the adverse portions of the District Court's judgment. As a federal court sitting in diversity, we are bound to adjudicate the case in accordance with applicable state law. See Erie Railroad v. Tompkins, 304 U.S. 64 (1938). Both parties agree that Pennsylvania law gover ns this dispute.

A. Jurisdiction/Arbitrability of Claims Raised

To determine the arbitrability of a dispute a court must address two issues: 1) whether the parties for med an agreement to arbitrate; and 2) whether the dispute in question falls within the scope of that agreement. Messa v.

4

State Farm Ins. Co., 641 A.2d 1167, 1168 (Pa. Super. 1994). In this case, both parties concede the existence of an agreement to arbitrate. Thus, the sole question is whether the dispute regarding appellants' entitlement to seek recovery under the underinsured motorist (UIM) provision of the contract falls within the scope of the arbitration agreement.

Appellants argue that the District Court did not have jurisdiction to rule on the summary judgment motions that are the subject of this appeal because the insurance contracts require arbitration of their claim.1 The UIM provision of the Cosenza's insurance policy pr ovides:

> RECOVERY
>
> 1. Before recovery, we and any party seeking protection under this [UIM] coverage must agree on two points:
>
> a) whether there is a legal right to r ecover damages from the owner or driver of an underinsur ed motor vehicle; and if so,
>
> b) the amount of such damages.

_____

1. Nationwide argues that the appellants have not properly preserved this particular issue for appeal pursuant to F .R.A.P. 3(c)(1)(B), which requires an appellant's Notice of Appeal to "designate the judgment, order, or part thereof being appealed." Appellants' Notice of Appeal designated the District Court's November 2, 2000 Or der, which did not address the arbitration issue, instead of its October 27 Order, which did dispose of that issue. Appellants' failure to specifically designate the October 27 Order for appeal is not fatal because a policy of liberal construction of notices of appeal prevails in the Third Circuit where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party. Williams v. Guzzardi, 875 F.2d 46, 49 (3d Cir. 1989)("if from the notice of appeal itself and the subsequent proceedings . . . it appears that the appeal was intended to have been taken from an unspecified . . . or der . . . , the notice may be construed as bringing up the unspecified or der for review."); Murray v. Commercial Union Insurance Co., 782 F .2d 432, 434-35 (3d Cir. 1986)(exercising jurisdiction because despite the mislabeled Notice of Appeal, "in their appellate briefs all parties addressed every issue presented").

5

If agreement can't be reached, the matter will go to arbitration.

2. Questions between the injured party and us regarding whether the injured party is an insured under this coverage, or the limits of such coverage, are not subject to arbitration and shall be decided by a Court of law.

(Endorsement 2360, Underinsured Motorist Coverage -- Non-Stacked (Pennsylvania) App. 39a) (emphasis in original). Thus, according to the clear ter ms of the arbitration agreement, questions regar ding whether a claimant is an "insured" for the purposes of UIM coverage or questions regarding the limits of UIM coverage are to be decided by the courts. All other questions should be submitted for arbitration.2

First, we consider if this case presents the question of whether the appellants are "insureds" for the purpose of UIM coverage. The insurance policy defines an"insured" as "one who is described as entitled to protection under each coverage." (App. 12a)(emphasis added). Accor dingly, we look to the section governing UIM coverage to deter mine whether the appellants are entitled to protection thereunder. That coverage endorsement provides that Nationwide will pay "compensatory damages, including derivative claims, which are due by law to you or a relative fr om the owner or driver of an underinsured motor vehicle because of bodily injury suffered by you or a relative." (UIM Endorsement 2360, App. 38a)(emphasis added). Thus, for the purposes of this UIM coverage, an "insured" is the policy holder and relatives of the policy holder who are entitled by law to

---

2. Appellants also reference an arbitration provision found in the UIM coverage section of the auto insurance contract stating that "if we and the insured disagree about the right to r ecover damages, or the amount of such damages . . ." arbitration will ensue. (App. 29a). However, this broader arbitration provision was "r eplaced" by Endorsement 2360 to the insurance policy, which states "[t]his endorsement replaces the policy's Underinsured Motorists coverage section. Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement." (App. 38a). Accordingly, we look to the arbitration provision set out in Endorsement 2360 to determine the arbitrability of the instant dispute.

recover damages from the driver or owner of the underinsured vehicle.

Nationwide argues that because appellants have recovered under the liability provisions and are prohibited by the policy language from also recovering under the UIM provisions that there are no damages "due by law" and thus, appellants do not fit within the definition of an "insured." This argument misappr ehends the definition of an "insured" set out in the UIM pr ovisions. The definition does not require that damages be due by law under the insurance contract, as Nationwide argues. Instead, the definition requires only that damages be due by law from the driver of an underinsured vehicle. Nowhere does Nationwide suggest that the appellants are not entitled under the law to recover additional damages fr om Nicolucci, the driver of the underinsured vehicle. Even if Nationwide did advance such an argument, the issue of whether appellants are legally entitled to damages fr om Nicolucci is an issue that falls squarely within the agr eement to arbitrate, as set forth above. Further, Nationwide's argument begs the question of who is an "insured" because it argues that the appellants are not "insureds" because Nationwide is correct about the underlying dispute regarding whether or not the dual r ecovery prohibition is enforceable. The question of whether that pr ovision is enforceable, however, is a separate and distinct question from whether the appellants are "insur eds" under the UIM coverage.

The fallacy of Nationwide's argument is also demonstrated by the "limits of payment" pr ovision of the contract, which Nationwide references in support of its argument. That provision states, "[t]he insured may recover for bodily injury under the auto liability coverage or the underinsured motorist coverage of this policy, but not under both coverages." (UIM Endorsement 2360, App. 40a) (emphasis added). This provision forms the basis of Nationwide's argument that there ar e no damages "due by law" and that, therefore, appellants ar e not insureds. However, this same provision effectively states that appellants are considered "insur eds" within the meaning of the UIM coverage. Thus, the underlying dispute in this case

cannot be characterized as a dispute regar ding whether the injured party is an insured and cannot escape arbitration on that basis.

We must also consider whether this case pr esents a question regarding the limits of UIM coverage. We conclude that the dispute does not fall within the arbitration agreement because it is clearly within the second prong of the arbitration agreement as a dispute about the "limits" of the coverage. The UIM Endorsement contains the following provision:

> LIMITS OF PAYMENT
>
> Amounts Payable for Underinsured Motorists Losses
>
> We agree to pay up to the limits stated in the policy Declarations. The following applies to these limits:
>
> ***
>
> 4. The insured may recover for bodily injury under the Auto Liability coverage or the Underinsured Motorists coverage of this policy, but not under both coverages.

(UIM Endorsement 2360, App. 40a). According to the express terms of the UIM endorsement, the underlying dispute is a question between the injured parties and Nationwide regarding the limits of coverage and must, by the very terms of the insurance agreements, be decided by a court of law.

Appellants argue that, in light of the important state law public policy favoring arbitration of automobile insurance disputes, this dispute must be dismissed by the court and submitted to arbitration. Indeed, Pennsylvania public policy does favor arbitration of insurance claims. Bor gia v. Prudential Insurance Co., 758 A.2d 843, 847-50 (Pa. 2000); Brennan v. General Accident Fire and Life Assurance Corp., 574 A.2d 580 (Pa. Super. 1980). However , state courts have not favored arbitration when to do so would contravene the express terms of a binding arbitration agreement. Brennan, 574 A.2d 580 (dismissing dispute as arbitrable, but disclaiming that it would have done so had ther e been any limiting language in the arbitration clause); Messa v. State Farm Ins. Co., 641 A.2d 1167, 1168 (Pa. Super. 1994)

8

(scope of arbitrator's authority is limited by ter ms of arbitration agreement). Therefore, despite Pennsylvania's preference for arbitration of auto insurance disputes, the District Court properly concluded that the dispute in this case is specifically excluded from the arbitration agreement and appropriately maintained jurisdiction over the claim.

B. Nationwide's Purported Cross-Appeal

In its brief Appellee Nationwide asks this Court to reverse the District Court on every issue where its conclusions were adverse to the insurance company. Specifically Nationwide argues the District Court erred in holding that Mrs. Cosenza is not excluded from seeking recovery under the UIM provision for her injuries, that Mr . Cosenza is not precluded from seeking recovery under the UIM provision for loss of consortium due to Mrs. Cosenza's injuries, and that Nationwide is not entitled to a credit for its contribution to the tort settlement. However , Nationwide failed to follow the procedures for lodging a cross-appeal on any of these issues. It is settled law that "what (an appellee) may not do in the absence of a cross-appeal is to `attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an err or or to supplement the decree with respect to a matter not dealt with below.' " Morley Constr. Co. v. Maryland Casualty Co., 300 U.S. 185, 191, 57 S.Ct. 325 (1937)(quoting United States v. American Ry. Express Co., 265 U.S. 425, 435, 44 S.Ct. 560 (1924)). Because a reversal on any of the three adverse holdings would enlarge Nationwide's rights and lessen Appellants' rights, Nationwide was required to file a cross-appeal.

Nationwide responds that its failure to cr oss-appeal is immaterial because this Court may affirm the District Court on any basis which finds support in the r ecord and/or that as long as the issue raised is mer ely an alternative argument relative to the judgment below, a cross-appeal on that issue is unnecessary. While these are accurate statements of law, they are inapplicable here because Nationwide is asking us to reverse the District Court, not to affirm on the basis of r ecord evidence. Additionally, Nationwide does not present any"alternative

arguments relative to the judgment below." On the contrary, it plainly asks us to reverse the District Court's holdings and constrict the appellants' rights, which we cannot do in the absence of a properly filed cross-appeal. Because Nationwide failed to file a cross-appeal, none of the three issues on which the District Court ruled adversely to Nationwide are properly before us on appeal.

III

Due to Nationwide's failure to file a cross-appeal, the only remaining substantive issues revolve around the effect of the insurance policy's "dual recovery" prohibition. A determination as to the proper construction and the validity of the dual recovery prohibition disposes of the three remaining substantive issues in this case. First, the District Court concluded that the contractual prohibition on recovering under both the liability coverage and the UIM coverage, precluded Mr. Cosenza and Ms. Dezii from seeking recovery for their own injuries under the UIM coverage and precluded Mrs. Cosenza from seeking recovery for loss of consortium based on her husband's injuries under the UIM coverage.

Second, Mr. Cosenza also maintained an umbrella insurance policy designed to protect against losses in excess of the amount covered by his other liability insurance policies, which provided an additional $1,000,000 in liability coverage and $500,000 in UIM coverage. The umbrella policy here included the limitation that "[i]t is agreed that this endorsement is subject to the terms and conditions of the underinsured motorist coverage included in [the auto policy] . . ." (App. 49a). Accordingly, when the District Court concluded that no recovery was available under the UIM coverage of the auto policy for any injuries suffered by Mr. Cosenza or Dezii, it also had to conclude that they could not seek recovery under the umbrella policy. However, the converse is true as well. That is, if the dual recovery prohibition is unenforceable or interpreted narrowly as allowing UIM coverage for the appellants, they would be entitled to coverage under the umbrella policy as well.

10

Third, the district court concluded that Mrs. Cosenza's loss of consortium claim is ultimately based on bodily injuries suffered by Mr. Cosenza and is therefore derivative of his claim. Setting aside the dual recovery issue, under Pennsylvania law the success of a derivative claim is "always dependent upon the injured spouse's right to recover." Scattaragia v. Shin Shen Wu, 495 A.2d 552, 554 (Pa. Super. 1985). Thus, the District Court concluded that because Mr. Cosenza, as the injured spouse, had no right to recover under the UIM coverage or the umbrella policy, Mrs. Cosenza could have no right to recover derivatively under those same insurance contracts. Again, however, because this conclusion is based on the assumption that Mr. Cosenza had no right of recovery under the UIM coverage or the umbrella policy, a reversal on that issue necessitates a reversal on Mrs. Cosenza's derivative loss of consortium claim.3 Thus, a resolution of the dual recovery issue effectively resolves all of the substantive issues in this case.

A. The Express Terms of the UIM Insurance Coverage

Endorsement 2360 to Appellants' UIM insurance contract, which "replaces the policy's Underinsured Motorists coverage section," provides that"[t]he insured may recover for bodily injury under the Auto Liability coverage or the Underinsured Motorists coverage of this policy, but not under both coverages." (App. 38a & 40a) (emphasis added). Nationwide argues that this language clearly and unambiguously precludes Mr. Cosenza and Dezii, who have already received some payment under the liability coverage, from also recovering under the UIM coverage. Nationwide also argues that this dual recovery prohibition precludes Mrs. Cosenza from recovering derivatively under the UIM coverage for loss of consortium based on her husband's bodily injuries, because he recovered some damages under the liability coverage.

When interpreting the terms of an insurance contract the court must generally attempt to effectuate the intent of the

_____

3. It is undisputed that the UIM coverage includes coverage for derivative claims, such as a loss of consortium claim, based on bodily injuries suffered by Mr. Cosenza.

11

parties as manifested by the language of the written instrument. Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983); Mohn v. American Cas. Co. of Reading, 326 A.2d 346, 451 (Pa. 1974). To that end, courts must generally enforce the clear, unambiguous terms of the policy. See, e.g., The Medical Protective Co. v. Watkins, 198 F .3d 100 (3d Cir. 1999); Madison Construction Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100 (Pa. 1999). Nationwide argues that the terms of UIM coverage prohibiting dual recovery ar e clear and unambiguous and must therefore be enfor ced by this court.

The burden is on the insured to establish coverage under an insurance policy. Erie Ins. Exchange v. T ransamerica Ins. Co., 533 A.2d 1363, 1366–67 (Pa. 1987). As we concluded in the discussion on arbitrability above, appellants are clearly insureds under both the auto insurance policy and the umbrella policy. It is the insurer, however, that bears the burden of establishing the applicability of an exclusion in an insurance contract, American States Ins. Co. v. Maryland Cas. Co., 628 A.2d 880, 887 (Pa. Super. 1993), and exclusions ar e always strictly construed against the insurer and in favor of the insured. Selko v. Home Ins. Co., 139 F .3d 146, 152 n. 3 (3d Cir. 1983).

B. Invalidating Clear and Unambiguous Exclusions in Insurance Contracts

Instead of arguing that the dual recovery provision is ambiguous, appellants' main avenue of attack is to argue that the provision is unenforceable as violative of public policy as evidenced by case law and the intent of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa. C.S.A. S 1701, et seq. Nationwide takes the exactly contrary position and argues that not only is enforcement of the dual recovery pr ohibition consistent with public policy, dual recovery is never allowed under Pennsylvania law regardless of whether the insurance contract at issue expressly prohibits it.

Pennsylvania courts have consistently held that"even clear and unambiguous insurance policy language may conflict with an applicable statute, [including] . . . the

MVFRL." Kmonk–Sullivan v. State Farm Mut. Ins. Co., 746 A.2d 1118, 1121 (Pa. Super. 1999). See also Allwein v. Donegal Mut. Ins. Co., 671 A.2d 744, 752 (Pa. Super. 1996) (en banc). While courts do not have a license to r ewrite insurance contracts, insurers do not have a right to rewrite or undercut state legislation or policy. Allwein, 671 A.2d at 752; Kmonk–Sullivan, 746 A.2d at 1121. In such situations, courts will not give effect to the contract pr ovision:

> As a general rule, stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws.

Id. See also George J. Couch, Couch on Insurance 2d (Rev. ed.) S 13.7 at 827 (1984). Accordingly, if the dual recovery prohibition contained in appellants' UIM coverage conflicts with the MVFRL or the public policy inherent therein, this Court must declare it invalid and unenfor ceable.

The Pennsylvania Supreme Court has provided the following guidelines to assist in determining when an insurance contract provision is against public policy:

> Public policy is to be ascertained by refer ence to the laws and legal precedents and not from general considerations of supposed public interest. It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in declaring what is or is not in accord with public policy. The phrase "public policy" has been used also when the courts have interpreted statutes br oadly to help manifest their legislative intent.

Paylor v. Hartford Ins. Co., 640 A.2d 1234, 1235 (1994)(emphasis added) (citations omitted). Other state courts have further elaborated that "in deciding whether to uphold an insurance policy exclusion, which operates to deny coverage to an injured party, [our focus] is the factual circumstances of the particular case." Kmonk–Sullivan, 746 A.2d at 1123. See also Paylor v. Hartfor d Ins. Co., 640 A.2d

13

1234, 1240 (Pa. 1994). Moreover, "[c]ontract provisions [that] are not in accord with public policy, and are not advantageous to the insured are particularly subject to a finding of invalidity." Kmonk-Sullivan, 746 A.2d at 1123. See also Allwein, 671 A.2d at 753 (quoting Geor ge J. Couch, Couch on Insurance S 13.7, at 827-29 (2d ed. rev. 1984)). There is also a presumption that"the Legislature intends to favor the public interest as opposed to any private interest." Pennsylvania Fin. Responsibility Assigned Claims Plan v. English, 664 A.2d 84, 87 (Pa. 1995)(citations omitted). See also Allwein, 671 A.2d at 751; Kmonk-Sullivan, 746 A.2d at 1123; 1 Pa. C.S. S 1922. These guidelines are read to favor coverage for the insured in close or doubtful cases. Kmonk-Sullivan, 746 A.2d at 1123; Allwein, 671 A.2d at 751.

This Court has also had occasion to consider limits on the enforceability of clear and unambiguous pr ovisions in insurance contracts under Pennsylvania law. In Bensalem Twp. v. International Surplus Lines Ins. Co. , after a review of Pennsylvania law, we concluded that under limited circumstances the reasonable expectations of the insured may override the clear and unambiguous terms of the contract. 38 F.3d 1303, 1311 (3d Cir. 1994). In reaching this conclusion, the court observed:

> We are unable to draw any categorical distinction between the types of cases in which Pennsylvania courts will allow the reasonable expectations of the insured to defeat the unambiguous language of an insurance policy and those in which the courts will follow the general rule of adhering to the pr ecise terms of the policy. One theme that emerges fr om all the cases, however, is that courts are to be chary about allowing insurance companies to abuse their position vis-a-vis their customers. Thus, we are confident that where the insurer or its agent cr eates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy that expectation will prevail over the language of the policy.

Id. (emphasis added).

As discussed in more detail below, the obligation of courts to invalidate insurance contract provisions that are

14

contrary to state law or policy has been taken very seriously by Pennsylvania courts. However, before we can determine if state law or policy is implicated we must examine the legislative intent and policies underlying Pennsylvania's MVFRL.

C. Pennsylvania Public Policy and the MVFRL

Generally, statutes requiring underinsur ed motorist coverage are remedial and must be construed liberally, narrowly interpreting exclusions so as to provide the desired remedy. Couch, supra SS 45:624. The purpose of these statutes is limited to protecting those persons who purchase motor vehicle liability insurance and then suffer bodily injury or property damage caused by a motorist who did not purchase similar coverage. Id. Pennsylvania embodied its public policy of protecting such persons in the MVFRL. Applicable standards of statutory construction compel Pennsylvania courts to "ascertain and ef fectuate the intention of the General Assembly" and to strive to give effect to all provisions in a statute. 1 Pa.C.S. S 1921(a). See also Kmonk-Sullivan, 746 A.2d at 1121.

The MVFRL contains no explicit statement of legislative intent or purpose. However, Pennsylvania courts are unanimous that the legislative intent underlying the MVFRL was to establish a liberal compensatory scheme of underinsured motorist protection. See, e.g., Kmonk-Sullivan, 746 A.2d at 1123; Marroquin v. Mutual Benefit Ins. Co., 591 A.2d 290, 293 (Pa. Super. 1991). Courts also agree that the MVFRL is a remedial statute that must be liberally construed to effectuate its policy of indemnifying victims of accidents for harm they suffer on Pennsylvania highways. See, e.g., Kmonk-Sullivan, 746 A.2d at 1123; Allwein, 671 A.2d at 751; Wolgemuth v. Harleysville Mut. Ins. Co., 535 A.2d 1145, 1151 (Pa. Super. 1988).

More specifically, UIM insurance is designed to protect an insured from a negligent driver of another vehicle who causes injury to the insured, but through no fault of the insured, lacks adequate insurance coverage to compensate the insured for his or her injuries. Eichelman v. Nationwide Ins. Co., 711 A.2d 1006, 1008 (Pa. 1998); Kmonk-Sullivan, 746 A.2d at 1123; Wolgemuth, 535 A.2d at 1149.

15

Pennsylvania courts have been especially attentive to the fact that UIM coverage is purchased "to pr otect oneself from other drivers whose liability insurance purchasing decisions are beyond one's control." Paylor , 640 A.2d at 1238. See also Kmonk-Sullivan, 746 A.2d at 1123.

In cases such as this one Pennsylvania courts have also been attentive to whether or not there wer e two or more insurance contracts at play:

> The language of the [MVFRL] itself suggests that underinsurance motorist coverage requir es the existence of at least two applicable policies of motor vehicle insurance. See 75 Pa. C.S. S 1731(c). An underinsured motor vehicle, must, by definition, be an insured vehicle. Thus, the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage . . . , and a second policy . . . which the statute contemplates as the sour ce of underinsured motorist coverage. . . .

Wolgemuth, 535 A.2d at 1149 (emphasis in original). It is noteworthy that this condition is met here. That is, there are two policies at play – the liability insurance policy of Nicolucci and the UIM insurance policy of the appellants. As discussed below, in virtually all instances wher e UIM insurance exclusions are upheld it is because this condition is NOT present and the insureds ar e attempting to convert inexpensive UIM coverage in their policy into the more expensive liability insurance under the same policy.

In 1990 the legislature amended the MVFRL, which had previously made the purchase of UIM insurance mandatory, to give insureds the choice of saving money on premiums or purchasing more protective coverage, such as UIM coverage. See generally Kmonk-Sullivan, 746 A.2d at 1124. The Pennsylvania Supreme Court finds these amendments relevant in that "there is a corr elation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive." Eichelman, 711 A.2d at 1010 (quoting Hall v. Amica Mut. Ins. Co., 648 A.2d 755, 761 (Pa. 1994)). Thus, by choosing to purchase UIM insurance, in the event of an injury caused by an underinsur ed

16

tortfeasor, an insured reasonably expects to shift the risk of loss to his or her insurer. Kmonk-Sullivan, 746 A.2d at 1124. Any other approach would shift the costs to the insureds who had no part in creating the risk that led to their injuries and who had no control over the tortfeasor's insurance decisions. "Allowing the insurers to evade payment of UIM benefits in [such a] case, where the insured had paid a premium to procur e UIM coverage, would be against public policy." Kmonk-Sullivan, 746 A.2d at 1124 & 1126.

D. Application of the MVFRL's Policies to UIM Insurance Contracts

As noted briefly above, Pennsylvania courts take their obligation to review and invalidate insurance contract provisions that are contrary to state law very seriously. There are innumerable cases addressing this issue and while state courts do not invalidate clear and unambiguous insurance clauses in every instance, neither have they been reticent about doing so, especially in cases involving attempts by insurers to withhold paid-for UIM benefits. There are two cases of particular r elevance to the instant case.

In Trapper v. Maryland Cas. Ins. Co., the Pennsylvania Court of Common Pleas invalidated a clear contractual provision that excluded an insured fr om recovering UIM benefits after he had already recover ed liability benefits under the same insurance contract. 17 Pa. D. & C. 4th 165 (1992). Trapper is factually indistinguishable from the instant case in that it involved a clear and unambiguous policy exclusion and that it was a two vehicle accident involving two tortfeasors. The court noted, "the operation of this clause excludes a class of plaintiffs in joint tortfeasor, two-car accidents who have paid for coverage and who have no control over the choice or type of coverage for a second non-occupied, non-owned vehicle." Id. at 168. The court concluded that the exclusion of UIM benefits in such a situation extinguishes UIM coverage for accident victims, regardless of the severity of their injuries, when a family member is the driver of one of the vehicles. Id. at 169. "The elimination of UIM motorist benefits in this situation results in the insured paying for benefits that cannot be

17

recovered. Clearly this cannot be the intent of the MVFRL." Id. The Trapper court's analysis is even more applicable to our case, where the appellants paid for very substantial liability coverage and substantial UIM coverage with the expectation that, as a result, they would be fully covered for any injuries sustained in a car accident regar dless of the amount of liability coverage purchased by the other driver.

The second case of particular relevance is Continental Ins. Co. v. Kubek decided by a federal District Court applying Pennsylvania law. 86 F.Supp.2d 503 (E.D. Pa. 2000). The issue in Kubek was whether an insurer was required to provide UIM coverage to an insured who had already recovered liability benefits from his insurer and from the other driver's insurer. Id. The insurer moved for summary judgment based on a "family vehicle exclusion," which operated to preclude dual recovery in the same way that the dual recovery prohibition in the Cosenzas' contract purportedly precludes recovery. Id. Thus, while the policy exclusion in Kubek is not identical to the exclusion at issue in our case, it has the exact same effect in the exact same factual circumstances.

After an extensive review of state case law, the Kubek court refused to uphold the family car exclusion, concluding that cases involving only one tortfeasor were not applicable to determining the enforceability of coverage exclusions in joint tortfeasor cases. Id. at 505-07. After reviewing the reasoning behind upholding exclusions in single tortfeasor cases and the intent behind the MVFRL, the District Court concluded that even though the victim received liability benefits under his wife's (one of the drivers) policy, that recovery was based only on her role in the accident and had no effect on the victim's ability to claim UIM benefits under the same policy for the other tortfeasor's negligence. Id. at 509. This conclusion was based on the rationale that "[a]s ther e are two policies in play, the prohibition on recovering fr om a single policy is not at issue; Mr. Kubek is not attempting to convert his UIM coverage into liability coverage." Id.

Finally, it is noteworthy that Pennsylvania courts have invalidated express UIM provisions excluding coverage as violative of public policy or the intent of the MVFRL in other

18

instances as well. For example, courts have r epeatedly refused to enforce clear and unambiguous definitions of underinsured vehicles that exclude vehicles owned by government agencies. See, e.g., Midili v. Erie Insurance Group, 746 A.2d 1126 (Pa. Super. 2000); Kmonk-Sullivan v. State Farm Mut. Ins. Co., 746 A.2d 1118 (Pa. Super. 1999). Courts have also refused to enforce contract provisions that provide for gap UIM coverage, which provides less coverage than excess UIM coverage, because such provisions are contrary to the intent of the MVFRL. See, e.g., Allwein v. Donegal Mut. Ins. Co., 671 A.2d 744 (Pa. Super . 1996).

E. Application of the MVFRL to Dual Recovery Exclusion

Before moving to a specific discussion of how the relevant case law and the MVFRL applies to the facts of this case and this insurance contract, it is helpful to first address Nationwide's two arguments in favor of enfor cing the exclusion on dual recovery. First, Nationwide argues extensively that, regardless of the existence of a provision in the contract prohibiting recovery of both liability and UIM benefits, Pennsylvania public policy never  allows dual recovery. Obviously, the Trapper and Kubek cases referenced above directly contradict this assertion. Further, however, even in cases upholding exclusions that preclude recovery of UIM benefits, including the cases Nationwide cites in support of its argument, the courts have noted that dual recovery is not prohibited in all cases. See, e.g., Pempkowski v. State Farm Mutual Auto Ins. Co. , 678 A.2d 398, 403 (Pa. Super. 1996)(finding dual r ecovery prohibited because case involved only a single tortfeasor , but noting that such recovery would be allowed in cases involving joint tortfeasors and two insurance policies). Instead, whether a victim can recover both liability benefits and UIM benefits under the same insurance policy depends on the particular facts of the case at bar.

There is a certain category of cases wher e courts have uniformly declined to invalidate insurance exclusions that preclude recovery of both UIM benefits and liability benefits. It is these case and only these cases that Nationwide cites in support of its argument that dual recovery is always prohibited. These cases are easily distinguishable from the appellants' case, however, because

19

all of these cases involve single tortfeasor accidents and usually only one insurance policy. See W olgemuth, 535 A.2d 1145 (Pa. Super. 1988 (en banc) (single vehicle accident, exclusion enforceable to prevent conversion of UIM benefits to liability benefits); Newkirk v. USAA, 597 A.2d 1153 (Pa. Super. 1990)(same); Sturkie v. Erie, 595 A.2d 152 (Pa. Super. 1991)(same); Caldararo v. Keystone Ins. Co., 573 A.2d 1108 (Pa. Super. 1990)(single vehicle accident, family car exclusion enforceable to prevent conversion of benefits); Cooperstein v. Liberty Mut. Fire Ins. Co., 611 A.2d 721 (Pa. Super. 1992)(multiple vehicle accident, but exclusion upheld to avoid conversion of UIM benefits to liability benefits because ther e was only one tortfeasor). We are in accord with the Kubek court's extensive analysis, which concluded that these single tortfeasor cases were inapplicable to multiple tortfeasor, multiple insurance contract cases such as this one. Moreover, the rationale behind pr ohibiting dual recovery in single tortfeasor cases is simply inapplicable to joint tortfeasor cases.

Liability insurance is the most expensive for m of insurance in Pennsylvania. UIM insurance, on the other hand, is relatively inexpensive. As a r esult, Pennsylvania courts have refused to invalidate insurance contract exclusions that bar an insured from converting inexpensive UIM insurance into the more expensive liability insurance. Such a conversion can be accomplished when an insur ed purchases a small amount of liability insurance and then, once the insured is injured in an accident for which he or she was at fault, attempt to claim UIM benefits under the same insurance contract on the theory that the vehicle was underinsured. The Kubek court's apt summary of Pennsylvania law is instructive:

> The true holdings of Wolgemuth and its progeny are that an individual should not be able to convert the relatively inexpensive underinsured motorist insurance into the more expensive liability insurance simply by undercovering him or herself for liability insurance and then claiming that the vehicle was `underinsur ed.'

86 F.Supp.2d at 508. The rationale behind UIM insurance is inapplicable in single tortfeasor cases, wher e injured

20

parties can ensure that they have adequate coverage simply by purchasing adequate liability insurance. These are not cases where the victim is injured by someone whose liability insurance choices are beyond the victim's control. Finally, in accord with its thorough analysis of Pennsylvania state law, the Kubek court concluded that enforcing the family car exception is a "limited exception to the general rule that such provisions ar e invalid as against the policy of the MVFRL." Id. at 508. See also Paylor, 640 A.2d at 1240; Marroquin, 591 A.2d 296-97. Thus, it is the exception, rather than the rule, to enforce such exclusionary provisions.

The Pennsylvania Supreme Court has clearly stated that the primary consideration in determining the enforceability of an exclusion in an UIM contract is whether or not allowing recovering would effect a conversion of UIM coverage to liability coverage. In Paylor v. Hartford Ins. Co., the Court concluded that a family car exclusion was enforceable. In reaching this conclusion, however, the Court explained that the key issue in determining the enforceability of this type of UIM exclusion is whether, based on the facts of the particular case, the insur ed is attempting to convert UIM coverage into liability coverage. 640 A.2d 1234, 1240-41 (Pa. 1994).

Because a case by case analysis is requir ed we must determine whether invalidating the dual r ecovery prohibition in this case would allow appellants to effect an unlawful conversion of UIM benefits to liability benefits. This inquiry also allows us to address Nationwide's second argument in favor of enforcing the coverage exclusion. Allowing appellants to recover UIM benefits in the instant case would not effect a conversion of UIM benefits to liability benefits. In this case, when the umbr ella insurance policy is taken into account, appellants pur chased very substantial liability insurance (in excess of $1,500,000). However, if the dual recovery pr ohibition is enforced, it is irrelevant how much liability insurance they purchased. They still would not be able to recover for the full value of their injuries because they were injured by a driver who purchased inadequate liability insurance. This is not a case where appellants would be fully compensated for their

21

injuries if only they had purchased mor e liability insurance. In fact, it is the opposite case. They purchased very large liability insurance coverage AND very large UIM coverage ($1,000,000) with the expectation that they would be compensated for their injuries regardless of who was at fault and how much insurance that person had opted to purchase. To prohibit recovery denies them the UIM benefits that they paid for for many years and is contrary to the Pennsylvania Supreme Court's statement that insureds should receive the coverage for which they pay and that voluntarily choosing to purchase UIM insurance shifts the risk of loss to the insurer. See Eichelman, 711 A.2d at 1010; Hall, 648 A.2d at 761; Kmonk-Sullivan, 746 A.2d at 1124. Further, appellants' voluntary decision to purchase such substantial liability and UIM insurance policies reasonably created an expectation that they would be covered. As we held in Bensalem Twp., when a reasonable expectation of coverage is not supported by the terms of the policy, the expectation of coverage prevails over the language of the policy. 38 F.3d at 1311.

Nationwide argues that allowing recovery would effect a conversion of UIM benefits into liability benefits because of the laws of joint and several liability. It ar gues that appellants will attempt to recover UIM damages for all of their injuries, including those injuries attributable to the negligence of Mrs. Cosenza, who was a named insur ed. The argument is that under principles of joint and several liability Nationwide will be required to pay for all of the damages, but will be unable to recover those damages that are due to the comparative negligence of the driver for whom they have already paid liability benefits. This argument is unavailing for several reasons. First, it has not been established in this case that Mrs. Cosenza, the driver insured under Nationwide's liability policy, has any fault for the accident. Second, no Pennsylvania court has expr essed the slightest bit of concern over the fatalistic scenario that the application of joint and several liability will lead to a conversion of coverage, despite the fact that at least two courts have allowed dual recovery. Finally, Nationwide provides no evidence whatsoever that the application of such principles is mandatory in arbitration of these cases or that appellants would demand damages for all of their

22

injuries, as opposed to seeking recovery only for those injuries attributable to the comparative negligence of the underinsured motorist. The latter is appellants' acknowledged position in this appeal. Further , it is our expectation that, consistent with Pennsylvania law and this opinion, an arbitrator would allow recovery of damages attributable to the underinsured motorist's negligence, but would reject a demand for recovery of damages attributable to any contributory negligence by Mrs. Cosenza as contrary to the MVFRL.

Application of the principles underlying the MVFRL also supports invalidating the dual recovery pr ohibition in multiple tortfeasor cases. First, as discussed above, enforcing the dual recovery prohibition would result in denying appellants benefits for which they voluntarily paid additional premiums. Such a denial is contrary to the intent of the amendments to the MVFRL, which gave consumers the option of purchasing UIM benefits, but that also assumes consumers are entitled to the benefits that they voluntarily opted to purchase. Further , it denies them paid-for benefits in a case where they wer e injured by someone whose liability insurance purchasing decisions they could not control, the very situation they sought to avoid by purchasing UIM benefits and the very purpose for which UIM insurance exists. See Paylor, 640 A.2d at 1238; Eichelman, 711 A.2d at 1008; Kmonk-Sullivan , 746 A.2d at 1123.

Second, the only directly applicable case law, that which involves two or more tortfeasors and two or mor e insurance policies, invalidated insurance exclusions that operated to deny UIM benefits. Trapper, 17 Pa. D. & C. 4th 165; Kubek, 86 F.Supp.2d 503. These two decisions find additional support in the cases discussed above that uphold UIM exclusions, but that nonetheless recognize that cases involving two tortfeasors and two insurance policies are analytically distinct. See Wolgemuth, 535 A.2d at 1135; Pempkowski, 678 A.2d at 403. As the Pempkowski court noted, in joint tortfeasor situations, a claimant is not always precluded from seeking liability and UIM insurance benefits under the same policy. 678 A.2d at 403. See also Kubek, 86 F.Supp.2d at 505-09. The Pennsylvania Supreme

23

Court's decision in Paylor also supports r ecovery for the appellants because, under the facts of this case, allowing recovery would not allow the insureds to convert inexpensive UIM coverage into more costly liability coverage. 640 A.2d at 1240–41.

Third, upholding the dual recovery pr ohibition in multiple tortfeasor cases would be counter to the express purpose of UIM insurance, which is "protecting those persons who purchase motor vehicle liability insurance and then suffer bodily injury or property damage caused by a motorist who did not purchase similar coverage." Couch, supra S 45:624; Kmonk–Sullivan, 746 A.2d at 1123. Clearly, if the underinsured driver, Nicolucci, had purchased the same amount of liability coverage that appellants purchased, they could have recover ed for the full extent of their injuries. A fourth, and related, r eason to find the dual recovery provision unenforceable in this case, is that the MVFRL is a remedial statute that must be br oadly construed to effectuate its goal of fully compensating victims injured on Pennsylvania highways. Accor dingly, Pennsylvania courts narrowly construe exclusions such as the one at issue here. Kmonk–Sullivan, 746 A.2d at 1123; Allwein, 671 A.2d at 751. See also Couch, supra S 45:624. In this case, the only construction of the dual r ecovery prohibition consistent with Pennsylvania case law and the MVFRL, is to limit its enforceability to situations involving single tortfeasors, where invalidating the exclusion would permit the conversion of UIM benefits to liability benefits.

Fifth, and finally, state law requires that, in close cases, courts opt for an interpretation of the MVFRL and contractual provisions that provides coverage for the insured. English, 664 A.2d at 87; Kmonk–Sullivan, 764 A.2d at 1123; Allwein, 671 A.2d at 751. This appr oach is in accord with the presumption that the state legislature intends to favor the public interest over the private interest. English, 664 A.2d at 87.

For the foregoing reasons, we conclude that enforcement of the dual recovery prohibition in multiple tortfeasor cases such as this one is violative of the MVFRL. However , as the preceding discussion indicates, in single tortfeasor cases the dual recovery exclusion actually pr omotes the goals of

24

the MVFRL by barring unlawful conversion of UIM coverage to liability coverage. We cannot, ther efore, categorically declare that the exclusion is invalid and unenforceable. Instead, following the Pennsylvania Supreme Court's mandate to narrowly construe exclusions in insurance contracts, we construe the dual recovery pr ohibition as speaking only to single tortfeasor accidents wher e allowing recovery would effectuate a conversion of UIM coverage. This construction reads the exclusion as incorporating the case law pronouncements on the dual recovery issue into the insurance contract and invalidates the exclusion only in joint tortfeasor cases where enforcing it would be contrary to applicable case law and the intent of the MVFRL. Accordingly, we cannot agree with the District Court's holding that the dual recovery provision prohibits Mr. Cosenza and Ms. Dezii from seeking UIM benefits under the auto insurance policy or the umbrella policy for any damages due by law as a result of Nicolucci's negligence. We also hold that Mrs. Cosenza may seek loss of consortium benefits based on her husband's injuries under both the UIM coverage of the auto insurance policy and the umbrella policy.

IV

For the foregoing reasons, the District Court's Order of October 27, 1999 declining to dismiss the case for lack of jurisdiction is affirmed. The District Court's Order of November 3, 2000, prohibiting appellants fr om seeking recovery of underinsured motorist benefits, is reversed, and the matter is remanded back to the District Court for the entry of an Order referring the matter to arbitration for the purpose of determining the amount of an awar d under the underinsured motorist provisions of the auto insurance policy and the umbrella policy. Costs taxed against the appellee.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

25