**GENERAL STAR INDEMNITY COMPANY, Plaintiff**
**v.**
**VIRGIN ISLANDS PORT AUTHORITY, Defendant**

Civil No. 2001-188

District Court of the Virgin Islands

Division of St. Croix

January 5, 2007

FELICE M. QUIGLEY, ESQ., St. Croix, V.I., *For the Plaintiff.*

HENRY V. CARR, III, ESQ., St. Thomas, V.I., *For the Defendant.*

GOMEZ, *Chief Judge*

## MEMORANDUM OPINION

(January 5, 2007)

Before the Court is the motion of the plaintiff General Star Indemnity Company ("General Star") for summary judgment against the defendant Virgin Islands Port Authority ("VIPA"). For the reasons stated below, the Court will grant the motion.

## I. FACTS

From October 27, 1999 to March 15, 2001, and from March 15, 2001, to March 15, 2002, VIPA was insured by General Star under policy numbers IYA602264B and IYA60202264C, respectively (collectively, the "Policies"). General Star also provided excess coverage to VIPA during the same time periods under policy numbers IXG900174B and IXG900174C (collectively, the "Excess Policies").

The Policies provided two categories of coverage: Employment Practices Liability and Public Officials Liability. The insuring agreements in the Policies stated that General Star will pay the sums that VIPA becomes legally obligated to pay as damages resulting from "CLAIMS" to which the insurance applies for "EMPLOYMENT WRONGFUL ACTS" or for "PUBLIC OFFICIALS WRONGFUL ACTS." The Policies defined "EMPLOYMENT WRONGFUL ACTS" as:

[A]ctions involving refusal to employ, termination of employment, false arrest, false imprisonment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, libel, slander, invasion of privacy, wrongful eviction, malicious prosecution, abuse of process, discrimination or other employment-related practices, policies, acts or omissions. EMPLOYMENT WRONGFUL ACT(S) does not include any PUBLIC OFFICIAL WRONGFUL ACT(S).

The term "PUBLIC OFFICIALS WRONGFUL ACT(S)" was defined as:

[A]ny alleged or actual breach of duty, or violation of any federal, state, or local civil rights, by an insured while acting within the scope of his/her duties as a public official for the public entity named in the Declarations [VIPA]. PUBLIC OFFICIAL WRONGFUL ACT does not include any EMPLOYMENT WRONGFUL ACT(S).

The Public Officials Liability coverage contains exclusions:

k. For any damages arising out of or in any way connected with the operation of the principles of eminent domain, adverse possession, dedication by adverse use, inverse condemnation or condemnation proceedings, by whatever name used.

p. For any loss, cost, or expense arising, in whole or in part, out of any of the following: (1) the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; or (2) any request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants. ... Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

The Excess Policies incorporated the terms of the underlying Policies, except for the limits of liability and any provisions that were inconsistent with the terms of the Excess Policies.

On April 9, 2001, over 100 residents of Estate Paradise in St. Croix, U.S. Virgin Islands, commenced an action against VIPA in this Court

(the "Yellow Cedar litigation"). The Yellow Cedar litigation stems from the construction of an extension of the Henry E. Rohlson Airport in St. Croix. The Yellow Cedar plaintiffs allege that VIPA's actions in connection with the construction effected an unconstitutional taking of their real property. They also assert several causes of action stemming from the alleged emission of pollutants, dust, and other particles from the construction.

In a letter dated May 25, 2001, Marsh Risk Consulting, on behalf of VIPA, tendered the defense of the Yellow Cedar litigation to General Star.

On June 21, 2001, Summit Risk Services, Inc. ("Summit"), third party administrator for General Star, sent a letter to VIPA's counsel in which it declined coverage and refused to defend VIPA in the Yellow Cedar litigation. Summit sent a second letter on September 25, 2001, that reaffirmed General Star's position that the policies did not afford coverage but agreed to provide a defense while reserving General Star's rights under the policies.

General Star thereafter commenced this action seeking a declaration from this Court that the Policies do not afford coverage for claims made against VIPA in the Yellow Cedar litigation.

In this motion for summary judgment, General Star argues that the claims made against VIPA in the Yellow Cedar litigation do not fall under the Employment Liability Coverage Policies because they are not employment wrongful acts, as defined in the Policies. Furthermore, General Star contends that even if the Yellow Cedar plaintiffs allege public officials wrongful acts, coverage is precluded by exclusion k (the "inverse condemnation exclusion") and exclusion p (the "pollution exclusion").

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving

party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850, 122 S. Ct. 2559, 153 L. Ed. 2d 735 (2002).

### III. ANALYSIS

General Star argues that summary judgment is appropriate because the claims at the center of the Yellow Cedar litigation are not covered by the terms of the Policies.

 "The interpretation, construction and legal effect of an insurance policy is a question to be determined by the court as a matter of law." *Coakley Bay Condominium Ass'n v. Continental Ins. Co.*, 770 F. Supp. 1046, 1050, 26 V.I. 348 (D.V.I. 1991) (citing *Berne v. Aetna Insurance Co.*, 604 F. Supp. 958, 21 V.I. 342 (D.V.I.) *aff'd*, 782 F.2d 1026 (3d Cir. 1985)). Courts interpreting insurance policies should read the provisions within the context of the entire policy and any extensions attached thereto. *Id.* at 1051; 22 V.I.C. § 846 (2004).[1] Furthermore, courts "should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir. 1982) (quoting *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981)).

If the terms of a policy are unambiguous, it must be construed according to its plain language. Indeed, the "understanding of an ordinary person is the standard to be used in construing the insurance policy." *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I.

---

[1] Title 22, section 846 of the Virgin Islands Code provides:

Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy.

22 V.I.C. § 846.

1992). If any ambiguity exists, however, it must be construed against the insurer, and in a manner which is more favorable to coverage. *Vlastos v. Sumitomo Marine & Fire Ins. Co. (Europe) Ltd.*, 707 F.2d 775, 778 (3d Cir. 1983); *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I. 1992).

With these principles in mind, the Court will determine whether the claims underlying the Yellow Cedar litigation are covered by the Policies.

## A. Employment Practices Liability

General Star contends that the Yellow Cedar litigation claims are not covered by the Employment Practices Liability in the first instance. Specifically, General Star claims that the Yellow Cedar allegations do not involve employment wrongful acts, as defined in the Policies.

■ When determining whether a given claim is covered under an insurance policy, the burden is on the insured to establish coverage in the first instance. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (citation omitted). Only after the insured shows that the disputed claims are covered does the burden shift to the insurer to establish that an exclusion in the policy applied to bar coverage. *Id.*

VIPA's Employment Practices Liability covered employment wrongful acts (and no other types of acts). The definition of employment wrongful acts in the Policies includes the following extensive list of actions:

> refusal to employ, termination of employment, false arrest, false imprisonment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, libel, slander, invasion of privacy, wrongful eviction, malicious prosecution, abuse of process, [and] discrimination ... .

The definition also includes the catch-all phrase "other employment-related practices, policies, acts or omissions." Black's Law Dictionary defines the term employment as "[t]he relationship between master and servant" or "[w]ork for which one has been hired and is being paid by an employer." BLACK'S LAW DICTIONARY (8th ed. 2004). Given a common sense reading, the term "employment-related practices" means conduct that involves a master-servant relationship, or work in exchange for some form of compensation.

■ Here, it is undisputed that the Yellow Cedar litigation was brought by owners of property located near the airport construction site. None of the Yellow Cedar allegations suggest any master-servant, or work-for-hire relationship with VIPA. They are inverse condemnation, breach of contract, and tort claims. VIPA has presented no evidence in the record to even suggest to the Court how the Yellow Cedar claims could possibly be construed as involving employment-related practices.

Given the undisputed facts in the record, the Court finds that the plain language of the Employment Practices Liability precludes coverage of the Yellow Cedar claims, as those claims are not employment-related. *See Clarendon Nat. Ins. Co. v. City of York, Pennsylvania*, 290 F. Supp. 2d 500, 506 (M.D. Pa. 2003) (holding that the Employment Practices Liability section of an insurance policy did not cover claims against the city, because none of defendants in underlying action were ever employees of the city and claims did not relate to any employment relationship).

Accordingly, VIPA has failed to meet its burden of establishing coverage of the Yellow Cedar claims under the Employment Practices

## B. Public Officials Liability

General Star does not raise the issue of whether or not the Yellow Cedar claims are covered by the Public Officials Liability. Instead it claims that even if these claims are considered public officials wrongful acts and thus fall within the scope of the Policies, certain exclusions preclude coverage.

Whereas the policy-holder must establish that a claim falls within the scope of coverage in the first instance, the insurer bears the burden of proving that an exclusion bars coverage. *Nationwide Mut. Ins. Co.*, 258 F.3d at 206.

General Star points to the inverse condemnation exclusion and the pollution exclusion in VIPA's Public Official Liability policy as precluding coverage of the Yellow Cedar claims.

## 1. Inverse Condemnation Exclusion

General Star contends that the Yellow Cedar litigation is excluded from coverage under the Policies because it alleges inverse condemna-

tion.[2] Indeed, General Star points to the Yellow Cedar complaints, which generally describe the litigation as "an inverse condemnation action." The Yellow Cedar plaintiffs also allege that the airport construction has decreased the value of the surrounding properties to such an extent that it has resulted in a taking without just compensation or formal eminent domain proceedings.

The Policies in this case exclude from coverage any claims for "damages arising out of or in any way connected with the operation of the principles of eminent domain ... inverse condemnation, or condemnation proceedings, by whatever name used." The "arising out of" language suggests that "a claim need bear only an incidental relationship to the described conduct for the exclusion to apply." *Nutmeg Ins. Co. v. Clear Lake City Water Authority*, 229 F. Supp. 2d 668, 697 (S.D. Tex. 2002). Indeed, the term "arising out of" has been interpreted as precluding coverage of all claims in a complaint that would not have existed but for the inverse condemnation—even those that do not allege an unconstitutional taking. *Id.* (excluding breach of contract and *quantum meruit* claims pursuant to an inverse condemnation exclusion); *see also Transcontinental Ins. Co. v. City of San Bernardino*, 897 F.2d 533, (9th Cir. 1990) (noting that "inverse condemnation and tort are not distinct causes, but rather two ways to characterize the same cause of harm").

■ Here, it is undisputed that the Yellow Cedar litigation involves inverse condemnation as a result of VIPA's actions in connection with the construction of the airport extension on St. Croix. The record does not reveal any other factual basis for any alleged wrongful acts committed by VIPA, nor does VIPA argue that any exists. Indeed, based on the undisputed facts, were it not for the construction at the heart of the inverse condemnation action, the Yellow Cedar plaintiffs would have no cause to complain. Accordingly, the inverse condemnation exclusion in the Policies precludes coverage of the claims at the heart of the Yellow Cedar litigation under VIPA's Public Official Liability policy.

---

[2] An inverse condemnation action is "[a]n action brought by a property owner for compensation from a governmental entity that has taken the owner's property without bringing formal condemnation proceedings." BLACK'S LAW DICTIONARY (8th ed. 2004).

## 2. Pollution Exclusion

The Yellow Cedar plaintiffs have sought damages as a result of injury caused by "pollutants, dust, and contaminants" emitted from the airport construction project. To the extent those claims are not excluded by the inverse condemnation exclusion, General Star points to the pollution exclusion as proof that the Yellow Cedar litigation is excluded from the scope of coverage of the Public Officials Liability.

The Policies exclude coverage "[f]or any loss, cost, or expense arising, in whole or in part, out of ... the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." The term "pollutant" is defined in the Policies as:

> any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

VIPA contends that the terms of the exclusion should be interpreted narrowly in its favor because the Yellow Cedar plaintiffs have not specifically identified the exact nature of the pollutants, dust, and contaminants that caused them injury. However, reasonably intelligent people would agree that terms of this exclusion cover claims relating to harm caused by "any" solid, liquid, gaseous, or thermal irritant or contaminant regardless of whether the exact nature of the substance has been identified. None of the other provisions of the policy conflict with this interpretation, and VIPA has not offered any objectively reasonable explanation for its assertion that the particular composition of the pollutant is in any way a requirement of the definition. The terms of the pollution exclusion are broad and unambiguous. *Cf. Amerada Hess Corp. v. Zurich Ins. Co.*, 29 Fed. Appx. 800, 801 (3d Cir. 2002) ("[T]he very fact that [the parties] were able to offer conflicting, yet 'compelling,' interpretations establishes the essential ambiguity in this policy.").

Moreover, the Court finds that the plain language of the exclusions does not support VIPA's interpretation. An ordinary reading of the terms of exclusion supports the unambiguous proposition that it applies to damages caused by the release of "any" substance that could cause irritation or contamination, including dust or other unidentified "pollutants."

704

Accordingly, the pollution exclusion bars coverage of any claims underlying the Yellow Cedar litigation that seek damages for injury caused by pollutants.

## IV. CONCLUSION

Because there are no material facts in dispute and General Star is entitled to judgment as a matter of law, the Court will grant the motion for summary judgment as it relates to General Star's duty to defend or indemnify VIPA in the Yellow Cedar litigation pursuant to the Policies and the Excess Policies.[3] An appropriate judgement follows.

---

[3] General Star also moves for summary judgment with respect to its request for a declaration from the Court that it is entitled to reimbursement for the attorney's fees and costs expended defending claims not covered by the Policies. This issue will be disposed of separately. *See White v. N.H. Dept. of Employment Sec.*, 455 U.S. 445, 452, 102 S. Ct. 1162, 71 L. Ed. 2d 325 (1982) (recognizing that the issue of entitlement to attorney's fees "require[s] an inquiry separate from the decision on the merits").