

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-27-2006

# Allstate Ins Co v. Drumheller

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2591

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Allstate Ins Co v. Drumheller" (2006). *2006 Decisions*. Paper 835.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/835

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 05-2591

ALLSTATE INSURANCE COMPANY,

Appellant

v.

DONALD DRUMHELLER; GINGER KATZENMOYER

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. No. 02-cv-07411)
District Judge: Hon. Anita B. Brody

Before: McKEE and GARTH, <u>Circuit Judges</u>,
and LIFLAND, <u>Senior District Judge</u>[*]

Argued: May 15, 2006

(Opinion filed: June 27, 2006 )

MICHAEL T. McDONNELL, III, ESQ.  (Argued)
Ryan, Brown, McDonnell & Berger & Gibbons, P.C.
1600 Market Street, 14th Floor
Philadelphia, PA 19103
<u>Attorneys for Appellant</u>

JOHN C. BUTERA, ESQ.  (Argued)
Butera & Jones
130 West Lancaster Avenue
Wayne, PA 19087
<u>Attorneys for Appellee, Katzenmoyer</u>

---

[*]The Hon. John C. Lifland, Senior District Judge of the United States District
Court for the District of New Jersey, sitting by designation.

JAMES E. PRENDERGAST, ESQ.
Davis, Bennett, Spiess & Prendergast
130 West Lancaster Avenue
Wayne, PA 19087
Attorneys for Appellee, Drumheller

OPINION

McKEE, Circuit Judge.

Allstate Insurance Company appeals the District Court's order in this declaratory action in which that court ruled that Allstate had a duty to defend and indemnify Drumheller pursuant to its homeowner's policy with him. Drumheller had been sued to recover for injuries sustained by a third party as a result of an accident involving an all-terrain vehicle or ATV. For the reasons that follow, we will affirm the District Court.

**I.**

Since we write primarily for the parties who are familiar with this dispute, we need not set forth the factual or procedural background except insofar as may be helpful to our brief discussion. Drumheller's Deluxe Homeowner's Policy with Allstate provides limited coverage for bodily injury arising out of the use of an ATV, but contains the following exclusion:

> Losses We Do Not Cover Under Coverage X:
>
> We do not cover bodily injury . . . arising out of the ownership . . . use of any motor vehicle. . . . However, this exclusion does not apply to:
>
> b. any motor vehicle designed principally for recreational use off public roads, unless the vehicle is being used by an

2

insured person and is being used away from an insured premises.

The following definitions that are contained in the policy are relevant to our discussion:

> 7. "Residence Premises" means the dwelling, other structures and land located at the address stated in the Policy Declarations
>
> 8. "Insured Premises" means:
> (a) the residence premises; and
> (b) Under Section II only . . . .
> (6) any premises used by an insured person in connection with the residence premises.

In the coverage action underlying the instant dispute, the District Court initially determined that Allstate did not have a duty to defend or to indemnify Drumheller, because the injuries that are involved in the personal injury action in which Drumheller is a defendant occurred when the ATV struck a manhole on a trail which was not on the "residence premises." App. at 26. Accordingly, the District Court reasoned that Drumheller was a trespasser. App. at 27. The District Court framed the coverage issue under the relevant language of the policy as "whether the trail on which Drumheller was operating the ATV was used 'in connection with the residence premises.'" App. 26. After reviewing the undisputed facts, and relevant case law, the District Court held:

> Drumheller possesses no property rights in the trail, and use of the trail is not necessary to access his residence premises. Aside from Drumheller's use of the trail for recreational purposes, [Drumheller and Katzenmoyer] have failed to present any evidence that demonstrates a connection between Drumheller's premises and the trail.

3

App. 28.

Drumheller and Katzenmoyer appealed, and we remanded in an unpublished opinion, dated September 30, 2004. There, we noted that the Pennsylvania Superior Court had decided *State Farm Fire and Casualty Co. v. MacDonald*, 850 A.2d 707 (Pa. Super. 2004), after the District Court had entered judgment in favor of Allstate in Allstate's declaratory judgment action. In *MacDonald*, the Superior Court found that a homeowner's policy covered liability for the death of a visitor using an ATV even though the accident occurred on a field that was adjacent to the insured property. Since *MacDonald* bore directly on the coverage dispute between Drumheller and Allstate, we vacated the District Court's grant of summary judgment and remanded that dispute so the District Court could determine if *MacDonald* had any impact on its grant of summary judgment. App. at 296.

On remand, the District Court found that *MacDonald* did impact its original analysis. The court predicted that the Pennsylvania Supreme Court would follow the *MacDonald* analysis as to the scope of the coverage of Allstate's policy with Drumheller.[1] Accordingly, the District Court held that Allstate had a duty to defend and

---

[1] The District Court, exercising diversity jurisdiction in this declaratory judgment action, was obliged to apply the substantive law of Pennsylvania. *Nationwide Mut. Cas. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (citation omitted). Because there was no reported decision of the Pennsylvania Supreme Court addressing the issue presented here, it was the duty of the District Court to predict how the Pennsylvania Supreme Court would address it. *Id.* (citation omitted).

to indemnify Drumheller in Katzenmoyer's state court personal injury action.[2]  App. 297-

300.

Allstate then filed this appeal.[3]

## II. DISCUSSION

Under the terms of the policy, Katzenmoyer's bodily injury is not covered if

---

[2]To determine whether an insurer has a duty to defend an insured, a court must determine the scope of coverage under the insurance policy itself and then ascertain whether the complaint against the insured states a claim that is potentially covered under the policy.  *Britamco Underwriters Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. 1994). An insurance company must defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage.  *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985) (citing *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 321-22 (Pa. 1963)).  The duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy itself.  *Id*. (citing *Cadwallader v. New Amerstdam Cas. Co.*, 152 A.2d 484 (Pa. 1959)).

An insurer's duty to defend an action against the insured is not necessarily coextensive with its obligation to indemnify the insured.  *West American Ins. Co. v. Lindepuu*, 128 F.Supp.2d 220, 224-25 (E.D. Pa. 2000) (citing *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir. 1981)).  Whereas the duty to defend arises whenever the complaint filed by the injured party may fall within the scope of the policy's coverage, the duty to indemnify is more limited because it arises only if it is established that the insured's damages are actually covered by the terms of the policy. *Id.*  If there is no possibility that any of the underlying claims could be covered by the policy, then judgment in the insurer's favor with regard to the duty to defend and indemnify is appropriate.  *Id.*

[3]Drumheller contends that Allstate's appeal is untimely because the District Court's decision on remand was dated March 16, 2005, but Allstate did not file its Notice of Appeal until May 9, 2005, or fifty-three days after the decision on remand.

However, Allstate's appeal is timely.  Although the decision on remand was dated March 16, 2005, it was not entered on the docket until April 14, 2005.  Thus, the Notice of Appeal was timely filed "within 30 days after the judgment or order appealed from is entered."  F.R.A.P. 4(a)(1)(A).

Drumheller was operating the ATV "away from an insured premises." More specifically, if Drumheller was not operating the ATV on his "residence premises" or on "any premises used by [Drumheller] in connection with the residence premises," Katzenmoyer's bodily injury claim is not covered and, therefore, Allstate has no duty to defend or to indemnify Drumheller in Katzenmoyer's state court action. Obviously, when Drumheller struck the sewer manhole on the trail, he was not operating the ATV on his "residence premises." Therefore, the dispositive issue is whether the trail was used "in connection with the residence premises."

As noted, on remand the District Court applied the analysis in *MacDonald* and reasoned that, since the accident on the trail occurred in a location that Drumheller used in connection with the residence premises, the resulting injuries were covered under Allstate's policy. Therefore, after predicting that the state supreme court would follow *MacDonald*'s reasoning,[4] the District Court held that Allstate had a duty to defend and to

---

[4]In *Koppers Co., Inc. v. Aetna Cas. and Surety Co.*, 98 F.3d 1440 (3d Cir. 1996), we said that

> [w]e review the District Court's interpretation and prediction of state law *de novo*. In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply existing state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. In the absence of guidance from the state's highest court, we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue. We must also consider analogous decisions,

(continued...)

6

indemnify Drumheller in Katzenmoyer's personal injury action. Our analysis of *MacDonald* leads us to the same conclusion.

**A.** ***State Farm Fire and Casualty Co. v. MacDonald*, 850 A.2d 707 (Pa. Super. 2004).**

The facts of *MacDonald* are well-known to the parties and were thoroughly discussed during oral argument. Accordingly, we need not reiterate them in great detail. The policy State Farm issued to MacDonald excluded coverage for bodily injury arising out of the ownership of "a motor vehicle owned . . . by . . . any insured . . . ." 850 A.2d at 709. The policy defined a motor vehicle to include "a motorized . . . all-terrain vehicle . . . owned by an insured and designed or used for recreational or utility purposes off public roads, while off an insured location." *Id.* at 709-10. Finally, the policy defined "insured location" to mean:

> a. the residence premises;
> b. the part of any premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;
> c. any premises *used* by you *in connection with* the premises included in [a. or b.]

---

[4](...continued)
considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.

*Id.* at 1445.

*Id.* at 710 (emphasis in original).

In disposing of State Farm's appeal, the Superior Court first noted that the policy did not define "use" or the phrase "in connection with." The Superior Court held that "use" and "in connection with" had to be interpreted "according to their plain and ordinary meanings." *Id.* at 711. Thus, it concluded:

> In common parlance, "use" means "continued or repeated exercise or employment," or "habitual or customary practice." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2523 (4th ed. 1976). "Connection" means "the act of connecting: a coming into or being put in contact, id. at 481, and "with" is defined as "alongside of: near to." Id. at 2626.

*Id.* at 711. Accordingly, the Superior Court held that because MacDonald "repeatedly rode his ATV from his property onto the adjacent field and back," he "used the adjacent field in connection with his residence premises." *Id.*

The Superior Court found support for its analysis in *Nationwide Mut. Ins. Co. v. Prevatte*, 423 S.E.2d 90 (N.C. App. 1992), which involved an ATV accident on a trail that began on the insured's property and ended on a neighbor's property. *Id.* at 91. In her deposition, the insured testified that her children regularly rode ATVs on the property where the accident occurred; that the family used the trail for walking; that the family had been walking and riding on the trail for several years; and that each walk or ride began and ended on the insured's property. *Id.* at 92.

The homeowner's policy there defined insured location as the "residence

8

premises" and "*any premises used by you in connection with*" the residence premises. *Id.*

at 91 (emphasis in original). Nationwide argued that the definition of an insured

location, when read in context with the whole policy, applied only to those places in

which the insured had a legal interest. The North Carolina court disagreed and found

that the plain language of the definition of an "insured location" controlled, and held,

based on the insured's deposition testimony, that the location where the accident

occurred qualified as an insured location "as defined by the policy because it was used in

connection with the [insured's] residence." *Id.* at 92.

That trail was used "in connection with" the insured's residence, and the court

was unwilling to rewrite the policy "to restrict coverage to locations where the insured

[had] a legal interest." *Id.* In rejecting Nationwide's invitation to restrict the language

of the policy the court noted:

> that plaintiff-insurer, who drafted the policy, had the
> opportunity to restrict the definition of insured location to
> include only those locations in which the insured had a legal
> interest, by expressly providing so in the policy. Plaintiff-
> insurer failed to include such a provision. Absent such a
> clause of restriction, coverage should not be denied under the
> facts of this case.

*Id.*

In deciding *MacDonald*, the Pennsylvania Superior Court found "such reasoning

persuasive as State Farm [had] also failed to limit its coverage to . . those areas in which

the insured has an underlying legal interest. Under the plain language of the definition of

9

an 'insured location,' [thus, it concluded] MacDonald is entitled to coverage."

*MacDonald*, 850 A.2d at 712.

Here, Allstate criticizes the District Court both for predicting that the

Pennsylvania Supreme Court would follow *MacDonald* and for applying the *MacDonald*

analysis.  It makes a number of arguments as to why it has no duty to defend or to

indemnify Drumheller in Katzenmoyer's state court personal injury action.[5]  We consider

each of Allstate's arguments below:

### B. *MacDonald's* facts are different and, therefore, *MacDonald* does not control.

Allstate begins by noting that in *MacDonald*, the field where the accident

occurred was "adjacent" to MacDonald's property.  Therefore, Allstate claims that

Drumheller must establish that his property is "contiguous or immediately adjacent" to

MacElhenney's property where the trail is located.   However, argues Allstate, there is no

conclusive evidence that Drumheller's property "is bounded by the MacElhenney land."

Indeed, Allstate argues that the record demonstrated that to get to the trail, Drumheller

had to leave his own property.  According to Allstate:

> [T]he record more clearly demonstrates that in order for

---

[5]"The burden is on the insured to establish coverage under an insurance policy."
*Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (citation
omitted).  "It is the insurer, however, that bears the burden of establishing the
applicability of an exclusion in an insurance contract, and exclusions are always strictly
construed against the insurer and in favor of the insured."  *Id.* at 206-07 (citations
omitted).

10

> Drumheller to access the trail created by the construction of the sanitary sewer easement he had to cross []over a bridge leaving his property, proceed briefly on a closed public road called Mayberry Road, then enter onto his Aunt Diane and Uncle Ed's property, travel along easement trail passing manholes #3-#4-#5 (which appear to be on the [Aunt and Uncle's property], and then enter the first MacElhenney parcel containing manhole #6 and then proceed onto the second MacElhenney parcel before arriving at manhole #7.

Allstate's Br. at 15.

We note, though, that Allstate does not say how far Drumheller's property is from the beginning of the trail on MacElhenney's property. Drumheller's deposition testimony establishes the two pieces of land are quite close, even if they do not actually touch:

> Q: When you come down and across the bridge from your house and you turn right onto the trail, you don't go onto Mayberry Road, do you?
>
> A: I would be on Mayberry for a blink of an eye.
>
> Q: Just a couple of feet?
>
> A: Yes.

App. at 270.

In any event, although the parties spend a great deal of time arguing about whether the two properties are adjacent, we do not think that is dispositive. The foundation of Allstate's argument is that the Superior Court in *MacDonald* said that the field where the accident occurred was "adjacent" to MacDonald's property. Allstate

11

believes that the court's analysis was determined by the fact that the property where the accident occurred was "contiguous" to MacDonald's property. We disagree. "Adjacent" does not mean "contiguous," and we do not interpret *MacDonald* as requiring property to touch or share a common border with property in which the insured has a legal interest in order to be "adjacent" to that property or be used "in connection with" it.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 26, defines "adjacent" as follows:

> "not distant or far off" or "relatively near and having nothing of the same kind intervening" or "having a common border" or "abutting" or "touching" or "living nearby or sitting or standing relatively near or close together" or "immediately preceding or following with nothing of the same kind intervening."

BLACK'S LAW DICTIONARY at 38, defines "adjacent" as follows:

> "Lying near or close to: sometimes, contiguous; neighboring. *Adjacent* implies that the two objects are not widely separated, though they may not actually touch."

Thus, the fact that the Superior Court referred to the property where the accident occurred in *MacDonald* as being "adjacent" to MacDonald's property does not mean that the court was requiring the two parcels to actually touch in order for an accident on the former to be covered under the applicable policy language. The *MacDonald* court's description of where the accident occurred simply does not mean that MacDonald's property and the "adjacent" property were contiguous or bounded by each other. Indeed, BLACK'S LAW DICTIONARY at 26 draws a distinction between "adjacent" and

12

"adjoining." While "adjacent" is defined as above, "adjoining imports that [the objects] are so joined or united to each other that no third object intervenes." Had the Superior Court described the location of the accident as "adjoining" MacDonald's property rather than being "adjacent" to it, Allstate's argument would have considerably greater force.

However, we do not believe that the precise physical relationship of Drumheller's property to the MacElhenney property is the crucial inquiry. The entire focus in *MacDonald* was MacDonald's *repeated use* of the ATV on his property and on the adjacent field; not the precise relationship of the two parcels which were merely described as "adjacent." We think that the Pennsylvania Supreme Court would follow *MacDonald*'s holding that "in connection with" means the repeated use of the ATV emanating from and returning to the insured's residence.

Moreover, just as the Superior Court stressed, had Allstate intended to restrict coverage to property that actually adjoined or touched the insured premises, it could have easily drafted an appropriate limitation into the exclusions in the policy. It could have simply defined "insured premises" as "any adjoining or contiguous premises used by an insured person in connection with the residence premises." However, it did not define "insured premises" with any such restrictions.[6]

---

[6] We are not impressed with Allstate's argument that it cannot be expected to anticipate every possible contingency and that the absence of such an explicit limitation is therefore not relevant. It is neither burdensome nor unreasonable to enforce a policy extending coverage to property regularly "used in connection with" the insured's

(continued...)

## C. The District Court ignored the issue of the ownership of the trail.

On remand, the District Court found that the only possible distinction between *MacDonald* and the instant dispute "is the fact that the trail in the [Drumheller] case was within an easement acquired by the municipality." App. 32. The court believed that "possible distinction" was one "not material." *Id.*

Allstate submits that the distinction is material and cites two cases which it claims have held that publicly-owned property can never be an "insured premises." Allstate's Br. at 16 (citing *U.S.S.A. v. Parry*, 761 P.2d 157 (Ariz. Ct. App. 1988) (drainage basin) and *Safeco v. Birmie*, 516 N.E.2d 577 (Ill. App. Ct. 1987) (public school playground)). However, both cases are from state intermediate appellate courts outside of Pennsylvania, and therefore are not as persuasive as to how the Pennsylvania Supreme Court would rule if faced with Drumheller's case as *MacDonald* is.

Allstate also submits that a public street and a public right-of-way cannot be a part of an insured's premises. In fact, Allstate claims to have litigated that issue on several occasions and prevailed. Allstate's Br. at 16-17 (citing cases). However, with one

---

[6](...continued)
premises without regard to the insured's legal interest in such property. If the insurance company doesn't require a legal interest in its definition, we will not interpret the policy in a manner that writes that limitation into the contract of insurance absent evidence that such a limitation was intended by the parties and consistent with the reasonable expectations of the insured. *See Canal Insurance Co., v. Lloyds of London*, 435 F.3d 431, 440 (3d Cir. 2006).

14

exception, the cases cited by Allstate are decisions of state intermediate appellate courts.

Therefore, as noted above, they cannot be used to predict how the Pennsylvania Supreme

Court would rule if confronted with this coverage dispute. The only state supreme court

case cited by Allstate is *Falkosky v. Allstate Ins. Co.*, 439 S.E.2d 836 (S.C. 1993).

However, the issue there was whether an off-road motorcycle was "being used away

from an insured premises" when the rider had an accident on a vacant lot near the

insured's premises.   The issue was not, as here, whether an ATV accident occurred on

property "used by an insured person in connection with the residence premises."   Thus,

*Falkosky* is not as helpful as *MacDonald*.

Moreover, we doubt that the easement obtained by the municipal authority here

can be  characterized as either a public road or a public right-of-way.  It was a municipal

easement obtained to construct a sewer line.  The fact that there was a municipal

easement does not mean that the MacElhenneys were not still the private owners of that

land for the purpose of  predicting whether the Pennsylvania Supreme Court would apply

the reasoning of  *MacDonald*.

**D.  Better reasoned decisions.**

Allstate argues that even assuming that the MacElhenney's property is

"sufficiently proximate, adjacent to or 'connected with' the Drumheller property, better

reasoned judicial opinions than *MacDonald* compel judgment" in its favor.  Allstate's Br

at 18-19 (citing cases).  The "better reasoned judicial opinions" cited by Allstate are

15

decisions of state intermediate appellate courts or District Courts not located in Pennsylvania that are not applying Pennsylvania law. We don't find them very helpful in predicting the outcome here.

Even the case most heavily relied upon by Allstate does not significantly advance its position. In *Massachusetts Prop. Ins. Underwriting Assoc. v. Wynn*, 806 N.E.2d 447 (Mass. App. Ct. 2004), the court held that the term "insured location" was limited to the residence and premises integral to its use as a residence. Thus, a beach 500 feet away that was owned by an owner's association and regularly used by the insured, was not used in connection with the residence premises.

To adopt the reasoning of *Wynn*, we would have to re-write the terms of Drumheller's policy to limit coverage to the residence premises and premises *integral to its use* as a residence. The instant policy does not refer to property that is "an integral part" of Drumheller's residence; it refers to property that is regularly used "in connection with" it. It is clear that Drumheller's regular recreational use of the property in question was "in connection with" his residence.

### E. Drumheller's status as a trespasser.

The District Court initially noted that Drumheller was a trespasser while riding on the trail. On remand, however, the court did not repeat that observation, either because it felt that Drumheller's status as a "trespasser" was irrelevant to its analysis or because it did not consider the issue. In either event, Allstate argues here that the District Court's

16

statement in its first opinion that Drumheller was a trespasser was significant because it is against public policy to allow a trespasser, through repeated trespass, to transform another's property into a place that is used "in connection with" the trespasser's residence. However, it offers no authority for that public policy argument.

In addition, Allstate claims that the owner of the adjacent field in *MacDonald*, conferred the status of a licensee upon the ATV users by extending permission to them to drive the ATVs on the field. Therefore, Allstate argues that, under *MacDonald*, Drumheller's status as a trespasser has to be considered in determining whether the trail was "used in connection with" Drumheller's property. Allstate's argument that the *MacDonald* ATV users were licensees on the adjacent field is based upon the following snippet of MacDonald's deposition testimony discussing the adjacent field:

> I did meet one of the farmers – I don't remember what year . . . they were on their tractor . . . and what I remember is, as long as we stayed on the perimeters of the fields . . . nobody had a problem with that.

*MacDonald*, 850 A.2d at 711. However, there is no indication who the farmers were or if they were in fact the owners of the adjacent field, and the court certainly did not factor that into its analysis. We are not willing to attach more importance to that testimony than did the court that decided the case.

Moreover, even if we assume *arguendo* that Drumheller was a trespasser on the trail, we do not believe that he would be excluded from coverage under the policy. Given the language of the policy, the issue would remain whether he used the trail "in

17

connection with" his residence premises.  He clearly did.

### E.  To be a "premises used in connection with" requires that the insured have some legal interest in the accident location.

Despite the fact that *MacDonald* held that the insured did not need a legal interest in the place where the accident occurred in order for it to be a premises used in connection with the insured's residence premises, Allstate argues that the terms of its policy require that the insured have such a legal interest.  In making that argument, Allstate points to the definition of "insured premises" contained in the policy, which reads:

8. "Insured premises" – means:

a) the residence premises; and

b) under Section II only:

1) the part of any other premises, other structures and grounds, used by you as a residence.  This includes premises, structures, and grounds you acquire for your use as a private residence while this policy is in effect;

2) any part of a premises not owned by an insured person but where an insured person is temporarily living;

3) cemetery plots or burial vaults owned by an insured person;

4) vacant land, other than farmland, owned by or rented to an insured person;

5) land owned by or rented to an insured person where a one, two, three or four family dwelling is being built as that person's residence;

6) any premises used by an insured person in connection with the residence

18

premises;

    7) any part of a premises occasionally rented to an insured person for other than business purposes.

App. at 50.

However, even the most cursory glance at this provision of the policy shows that this argument is meritless. Although many of these sub paragraphs clearly require or anticipate a legal interest, the provision at issue here, ¶ 8.b.6, clearly does not. This argument appears to be yet another attempt to have us amend the policy language, something we cannot do. "*Any premises* used by an insured person in connection with the residence premises," is not restricted to premises in which the insured has a legal interest. "Any" means "any."

### F. Inconsistent Superior Court opinions.

Finally, Allstate contends that two pre-*MacDonald* Superior Court opinions are inconsistent with *MacDonald* because they support the proposition that a legal interest is a relevant consideration. The cases Allstate considers inconsistent with *MacDonald* are *Federal Kemper Ins. Co. v. Derr*, 563 A.2d 118 (Pa. Super. 1989) and *Uguccioni v. United States Fidelity and Guaranty Co.*, 597 A.2d 149 (Pa. Super. 1991). Presumably, Allstate is arguing that because of the alleged inconsistency, the District Court erred in applying *MacDonald* and by predicting that the Pennsylvania Supreme Court "will follow the same reasoning as the Superior Court of Pennsylvania" did in *MacDonald*. App. 300. However, neither case is inconsistent with *MacDonald*.

19

In *Federal Kemper*, Hanna, while operating an ATV owned by Derr, struck Gappa, causing personal injuries and ultimately her death by suicide. At the time of the accident, Gappa was walking along a private road leading to a ten acre tract of land owned by Derr, located in the Roaring Creek Forest Preserve. Derr had given Hanna permission to operate the ATV.

The private road was the only means of ingress and egress to the Derr land, and likewise served about ninety other adjoining landowners in the Forest Preserve, all of whom possessed an easement over the private road for access to their properties. Derr, for many years before and after the accident, used a camper on his tract as a weekend and summer retreat. Derr's principal residence was elsewhere.

Gappa's estate sued Derr for negligence in allowing Hanna to operate the ATV. After Derr notified Federal Kemper, it sought a declaration that it had no duty to defend or to indemnify Derr. Federal Kemper's complaint alleged that the location was not an "insured location" as defined by ¶ 4 of the policy and, coverage was, therefore, excluded. The parties stipulated that any exclusion would arise from ¶¶ 4(b), 4© and/or 4(e). Paragraph 4 read, in pertinent part:

> 4. "insured location" means:
>
> a. the residence premises;
> b. the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the Declarations or which is acquired by you during the policy period for your use as a residence;
> c. any premises used by you in connection with the premises included in 4a or 4b. . . .

20

e. vacant land owned by or rented to any insured other than farm land[.]

563 A.2d at 120.

The Superior Court affirmed the trial court's finding that Derr's property was not an  insured location because it had not been purchased within the policy period so as to qualify as an insured location under ¶ 4b,[7] and therefore the court refused to find that the private road was an insured location under ¶ 4c.  Accordingly, *Federal Kemper* is not inconsistent with *MacDonald. Federal Kemper* had nothing to do with whether the insured must have a legal interest in the place where the accident occurred to be considered premises "used in connection with" residence premises.

In *Uguccioni*, the Superior Court had to decide whether a private road in a private residential development was an insured location under a homeowner's policy.  The Superior Court held:

> The language used in the policy to define an "insured location" clearly is broad enough to include roads in a private development which are available for use in achieving access to the insured residence.

*Id.   Uguccioni* is not inconsistent with *MacDonald* because there is nothing in the *Uguccioni* opinion suggesting that the insured owned the private road on which the accident occurred.  In fact, the opinion is silent as to ownership of the private road.

---

[7]The policy period was June 23, 1982 to June 23, 1983.  However, Derr purchased his tract in 1979.

21

## III. CONCLUSION

We believe that the District Court correctly predicted that the Pennsylvania Supreme Court would following the Superior's Court's reasoning in *MacDonald*. Accordingly, we will affirm the District Court

*Allstate v. Drumheller, et al.,* **05-2591**

**GARTH, Circuit Judge, dissenting**

I am compelled to dissent. My colleagues in the majority hold that Allstate has a duty to defend and indemnify Drumheller for the injuries suffered by Katzenmoyer. They so hold even though Allstate's policy does not cover losses that occur on land not used by an insured person in connection with his "residence premises," as the land at issue here was not.

The phrase "land used in connection with residence premises" has recently been interpreted by the Pennsylvania Superior Court to mean land (1) that the insured uses *regularly*, and (2) that is *adjacent* to the insured's residence premises. *State Farm Fire and Casualty Co. v. MacDonald,* 850 A. 2d 707, 711 (Pa. Super. Ct. 2004). Thus, the test of whether liability attaches or not is comprised of two criteria – *not* one criterion, as my colleagues have limited it.

My dissent is driven by *MacDonald*'s interpretation of the policy provision, by sheer logic and by pragmatism. As neither my colleagues nor I can determine from the submissions of the parties whether the "residence premises" are *adjacent* to the area where the accident occurred and if that "*adjacency*" comports with *MacDonald*'s instruction, I believe it is incumbent upon us *not* to decide whether Allstate has a duty to defend and indemnify, but rather to remand to the District Court for a determination of whether the areas in question are touching and whether they meet the standard of

23

adjacency as *MacDonald* has decreed it.

## I.

The majority has concluded that the "crucial inquiry" in the test established by *MacDonald* is only the first criterion (*i.e.,* regular use). The record demonstrates that Drumheller *regularly* drove his ATV on the part of the trail where the accident occurred. The majority does not read *MacDonald* as imposing a second criterion, *adjacency.* Contrary to *MacDonald*'s holding, the majority claims that the *MacDonald* court did not intend "adjacent" to mean "adjoining" or "touching."

I agree with the majority that the first criterion of the *MacDonald* test (regular use) clearly is fulfilled here; Drumheller regularly drove his ATV on the land where the accident occurred. My agreement ends there, however.

## II.

It is crystal clear to me that the *MacDonald* court's test for land "used in connection with the residence premises" includes an *adjacency* requirement in addition to its "*regular use*" requirement. If it did not, the universe of what would constitute "land used in connection with the residence premises" would expand to include every place an insured visits and rides his ATV regularly. Under that test, if Drumheller regularly drove his ATV in, say, Naples, Florida – more than 1,200 miles from his residence premises – and an accident occurred there, Allstate would be required to defend him in a suit brought by the injured party! That a person visits a place regularly, does not mean the person uses

24

that place "in connection with his residence premises" in any ordinary sense of that phrase. I am confident this cannot be what the *MacDonald* court intended.

I not only contend that "adjacency" is a primary requirement under the *MacDonald* test; I disagree that "adjacency" does not mean "adjoining" or "touching." The majority's primary reason for concluding that the *MacDonald* court did not mean "adjoining" or "touching" when it used the word "adjacent" is that it believed the land where the accident occurred in *MacDonald was not* adjoining or touching the insured's residence premises – when it was!

The text of the *MacDonald* opinion directly contradicts the majority's reading. It reports that MacDonald rode his ATV on his property "and the adjoining properties, including the adjacent field where the accident occurred." *Id.* It also states that "the perimeter of the field upon which the accident occurred starts on the MacDonald [] property and continues on the adjacent field." *Id.* The clear meaning of this language is that the adjacent field touched – adjoined – MacDonald's property. Though I concede that the dictionary contains some definitions of "adjacent" that do not require touching, I cannot conclude, based on the context of its ruling, that the *MacDonald* court had these definitions in mind when it used the word "adjacent." Indeed, their absence from the *MacDonald* opinion lends stark weight to my dissent.

For these reasons, I would hold that, under *MacDonald*, land "used in connection with the residence premises" means land which the insured used *regularly*, and land that

is *adjacent* to – meaning *touching, adjoining, contiguous with* – the residence premises.

**III.**

In their briefs and at oral argument, the question of whether the insured property and the land where the accident occurred were touching, was sharply disputed. The Appendix submitted to us – which included unreadable maps and vague oral descriptions of the relative location of the properties in question – were of no help to the panel in resolving this dispute. Prior to the oral argument, Allstate had moved to permit additional exhibits in the form of colored and enlarged maps to be used during the oral argument. The accuracy of these maps was disputed, but what was not disputed was the fact that they had not appeared in the record below. The maps, if accepted by our panel (and they were not), would have indicated that the residence premises and the MacElhenney property (where the accident occurred) were *not adjacent* – they did not touch or adjoin.

In light of this continuing controversy between the parties, I believe it to be only fair and just to both parties that we remand to the District Court with leave to the parties to submit relevant maps and evidence to determine whether the properties in question are "adjacent" to each other under the *MacDonald* two-criteria standard.

I therefore respectfully dissent, for the purpose stated above, and urge my colleagues to remand to the District Court.

26